IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**FILED**
July 13, 2006

| | | |
|---|---|---|
| **MILTON ALLEN** | § | **CLERK, U.S. DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 3:05-cv-0848-R** |
| | § | |
| **SOLO CUP COMPANY, D.B.A.** | § | |
| **SWEETHEART CUP** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Solo Cup Company's Motion for Summary Judgment (filed January 17, 2006) (Dkt. No. 22). After careful consideration of all parties' submissions, and the law applicable to the issues before the Court, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Milton Allen ("Plaintiff" or "Allen") has sued his former employer, Defendant Solo Cup Company ("Defendant" or "Solo Cup"), for age and race discrimination in violation of the Texas Labor Code ("chapter 21"),[1] Tex. Labor Code Ann. §§21.001 et seq. (Vernon 1996 & Supp. 2005), and for negligent supervision.

---

[1] When the Texas Commission on Human Rights Act was recodified into the Texas Labor Code, the revised law omitted as unnecessary the short title of the act. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 377-78 (Tex. 2004). In addition, the Commission on Human Rights was recently abolished and its powers and duties were transferred to the newly-created Civil Rights Division of the Texas Workforce Commission. *Id.* Accordingly, we will not refer to chapter 21 of the Labor Code as the Texas Commission on Human Rights Act, or "TCHRA," which it has commonly been referred to in the past.

Allen is a fifty-four year old African American male.  In April 1978, he was hired by Sweetheart Cup Company ("Sweetheart") as a Senior Maintenance Mechanic (Allen Depo. 12). Eighteen years later, in April 1996, Allen assumed the position of a Level 8 Production Maintenance Mechanic.  (Def.'s Mot. at 2).  As a Level 8 Production Maintenance Mechanic, Allen's duties and responsibilities included: ensuring that his assigned machine was operating at an optimum level during his shifts, troubleshooting mechanical problems, and making machine repairs to minimize disruptions to product production.  (Def.'s Mot. at 1).

On March 1, 2004, Sweetheart was acquired by Solo Cup, a manufacturer of disposable dinnerware and packing for consumer retail, food service, packaging, and international markets. (Jt. App. 1, Verville Decl. ¶ 2).  Allen continued to work for Solo Cup as a Level 8 Production Maintenance Mechanic at its Dallas plant, formerly a Sweetheart facility.  He was terminated by Solo Cup on November 2, 2004.  (Verville Decl. ¶ 2).  At the time of his termination, Allen reported to Anthony Lawrence ("Lawrence"), a floor supervisor.  (Jt. App. 87).  Lawrence was Allen's supervisor from 1999 to his termination.  (Allen Decl. at 107; Pl. App. A).

Beginning in March 2002, Allen received the first of what ultimately became a string of deficient work reviews and suspensions that culminated with his termination in 2004.  (Jt. Mot. App. 28, 29, 53-54).  During that same time period, which the Court will hereinafter refer to as the "Disciplinary Period," Allen filed numerous complaints with the Equal Employment Opportunity Commission ("EEOC").  (Jt. Mot. App. 3-5, 24, 31-32, 59).  Before March 2002, Allen was not subject to any formal notice of deficient work performance or work-related discipline, nor did he file any complaints with the EEOC.  (Allen Decl. at 1; Pl. App. A).

The incidents that occurred during the Disciplinary Period are as follows.  In March 2001, Lawrence submitted his first written performance review of Allen's performance, rating Allen's performance as "generally acceptable" (Jt. Mot. App. 23, 49-50).  The following March, however, Lawrence issued his second written review of Allen's work (the "Second Performance Review").  In the Second Performance Review, Lawrence commented that Allen needed to "be better in getting down machines up and to help out during breaks."  (Jt. Mot. App. 28, 29, 53-54).  The following June, Lawrence issued a written warning to Lawrence concerning his "attention to down machines" and his "effort to be a team player."  (Jt. Mot. App. 29, 30, 55-56).  During the same month, on June 18, 2002, Allen received a disciplinary action form for a "lock-tag-try" violation ("lock-tag-try disciplinary action").  Pursuant to the action form, Allen was suspended and informed that he would be terminated if he committed another "lock-tag-try" violation within one year.  (Jt. Mot. App. 30-31, 57-58).

Shortly after receiving the suspension associated with the lock-tag-try disciplinary action, Allen filed a charge of race discrimination and retaliation with the EEOC ("First Charge").  (Jt. Mot. App. 31-59).  His charge was dismissed and he was issued a Notice of Right to Sue on June 18, 2002.  (Jt. Mot. App. 31-59).

On or about January 29, 2003, Allen received a written warning for being out of a work area.  (Jt. Mot. App. 64, 88).  Following this written warning, Allen filed a second charge claiming age discrimination and harassment with the EEOC on February 7, 2003 ("Second Charge").  (Jt. Mot. App. 24).  In the Second Charge, Allen claimed that Lawrence called him an "old man" and told him that he needed to "speed up" his work.  Allen also alleged that Lawrence would "follow him to the bathroom" and "nitpick[]."  (Jt. Mot. App. 24; Allen Depo. ¶¶ 4-8, 23-

25, 39).  The EEOC dismissed the Second Charge and issued a Right to Sue letter.  Allen did not

file a lawsuit after the EEOC's dismissal of the Second Charge.  (Jt. Mot. App. 35, 36, 68-71).

The following months after the dismissal of the Second Charge were peppered with

written warnings issued by Lawrence,[2] disciplinary actions issued by Lawrence,[3] meetings

between Allen and his superiors discussing both his complaints about Lawrence[4] and his work

performance.[5]  Allen participated in a final disciplinary meeting on May 17, 2004, after which

Allen took a medical leave of absence from his employment until August 9, 2004.  Allen filed a

third charge alleging age and disability discrimination, retaliation, and harassment with the

EEOC on August 12, 2004 ("Third Charge").  The EEOC dismissed the Third Charge and issued

a Right to Sue letter on March 21, 2005.  (Jt. Mot. App. 3).

On September 28, 2004, Lawrence met with Allen to discuss a September 3, 2004

incident involving his allegedly incorrect analysis of a broken machine.  (Jt. Mot. App. 90;

Lawrence Decl. ¶ 90).  The Dallas Plant's Human Resources Manager, Martin Verville

("Verville"), was directed by Solo Cup's regional Vice President of Human Resources, Skip

---

[2] February 7, 2003 (failure to wear a beard net) (Jt. Mot. App. 89); April 15, 2004 (failure to seek direction to minimize low machine production efficiency and unproductive use of work time) (Jt. Mot. App. 41, 82-84); April 23, 2004 (neglecting responsibilities as a Level 8 Production Mechanic, production inefficiency, and attitude) (Jt. Mot. App. 90).

[3] On or around June 16, 2003, Allen received a disciplinary action notice from Lawrence after an incident involving "down machines" and Allen's work attitude.  (Jt. Mot. App. 37, 38, 75-76).  On or around July 14, 2003, Allen was placed on a thirty-day "Improvement Plan" because of the performance issues noted in the June 16, 2003 disciplinary action notice.  (Jt. Mot. App. 38, 39, 77).

[4] On or around April 28, 2003, Allen went with Rick Verhoeven ("Verhoeven"), Dallas Paper Department Head, and Jim Miller ("Miller"), Human Resources Manager, to discuss his concerns about Lawrence as his manager.  (Jt. Mot. App. 72, 103).

[5] On May 19, 2003, Lawrence met with Allen to discuss his performance deficiencies (Jt. Mot. App. 37, 73-74).  On July 22, 2003, Allen met with Rich Boucher ("Boucher"), Plant Manager, to discuss "improving his performance."  (Def.'s Mot. at 7).

Boyle ("Boyle"), to evaluate Allen's performance in connection with the September 3 incident in addition to his overall performance.  (Jt. Mot. App. 3, 4; Verville Decl. ¶ 14).  In October 2004, Allen's overall performance and Solo Cup's communications to him concerning his performance were reviewed by Boyles, Boucher, Verhoeven, and Corporate Human Resources Director, Barry White ("White").  (Jt. Mot. App. 4; Verville Decl. ¶ 4).  Solo Cup alleges that while this performance review was taking place, Allen again disregarded his duties as a Level 8 Production Mechanic when he used a machine that he knew had been taken out of production.  (Jt. Mot. App. 4; Verville Decl. ¶ 18).

Allen was terminated on November 2, 2004.  (Jt. Mot. App. 5).  The next day, he filed a fourth charge claiming race, age, and disability discrimination and retaliation with the EEOC ("Fourth Charge").  The EEOC dismissed the Fourth Charge and issued a Right to Sue letter on March 14, 2005.  (Jt. Mot. App. 5).

Allen timely filed this lawsuit in Dallas County District Court C-68th Judicial District, case number 05-03038.  The case was removed to this Court on April 28, 2005 (Dkt No. 1) under diversity jurisdiction.  On January 17, 2006, Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims.

## II. ANALYSIS

Defendant seeks summary judgment on Allen's chapter 21 claims and his negligent supervision claim.  Specifically, Plaintiff asserts that Solo Cup (1) terminated him because of his race and / or age; (2) subjected him to disparate treatment because of his race and / or age; and (3) failed to exercise reasonable care in evaluating the performance of Lawrence, Allen's

supervisor.  Defendant contends that the undisputed summary judgment evidence demonstrates

that Solo Cup had a legitimate, nondiscriminatory reason for discharging Allen - that is, his

continued unacceptable job performance. Defendant further claims that Allen is unable to show

that Solo Cup's justification for his termination was pretext or that there were discriminatory

motivating factors behind his discharge.  (Def.'s Mot. at 3).  Finally, Defendant asserts that Allen

is unable to maintain a cause of action for negligent supervision.

## A. Summary Judgment Standard

Summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to

any material fact. . ." FED. R. CIV. P. 56(c).  An issue is material if it involves a fact that might

affect the outcome of a suit under governing law.  *See Burgos v. Southwestern Bell Tel. Co.*, 20

F.3d 633, 635 (5th Cir. 1994).  The court must decide all reasonable doubts and inferences in the

light most favorable to the non-moving party.  *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268,

1272 (5th Cir. 1994).  As long as there appears to be some support for the disputed allegations

such that "reasonable minds could differ as to the import of the evidence," the motion must be

denied.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with any affidavits, that it believes demonstrate the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party

bears the burden of proof on a claim upon which summary judgment is sought, the moving party

may discharge its burden by showing that there is an absence of evidence to support the non-

moving party's case.  *Id.* at 325.  Once the moving party has satisfied this burden, the non-

moving party may not rest upon mere allegations or denials in the pleadings but must present

affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for

trial.  *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable

jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a

verdict. *Anderson*, 477 U.S. at 249-50.  In other words, summary judgment will be granted

"against any party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex*, 477 U.S. at 322.  A "sufficient showing" consists of more than a scintilla of evidence in

support of the moving party's position.  *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins.*

*Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise

an issue as to existence of an essential element).

**B.  Plaintiff's Claims of Age and Race Discrimination**

The Texas Labor Code provides a cause of action for retaliation or discrimination against

a person who exercises his rights under the provisions of chapter 21, which makes unlawful

certain employment practices based on a person's race, color, disability, religion, sex, national

origin, or age.  TEX. LABOR CODE ANN. § § 21.055, 21.051 (West 2005).  One of the purposes

behind chapter 21 is to provide for the execution of the policies embodied in Title VII of the

Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA),

and their subsequent amendments, so that the investigation and resolution of employment

discrimination claims may be handled at the state level. *See* TEX.LAB.CODE ANN. §§ 21.001, 21.002, 21.003, 21.006 (Vernon 1996 & Supp. 2005); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 482, 485 (Tex.1991) (Title VII); *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) (ADEA). Accordingly, the Court uses a federal evidentiary framework when interpreting chapter 21. *See Machinchick*, 398 F.3d at 356 (concluding that there is "no meaningful distinction" between the analysis that a court should employ under chapter 21 and the analysis it should apply to the analogous federal claim); *see also Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996). To withstand an employer's motion for summary judgment, the plaintiff-employee must present sufficient evidence to create a genuine issue of fact that he or she was discriminated against by the employer. *See Jackson v, TXU Corp.*, 2006 WL 509418 *2 (N.D. Tex. 2006).

"[Employment] discrimination can be established through either direct or circumstantial evidence." *Laxton v. Gap, Inc*., 333 F.3d 572, 578 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000), *cert. denied*, 535 U.S. 1078 (2002)). Indeed, the analysis a Court should utilize in an employment discrimination case depends on which type of evidence the plaintiff offers. *See TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *see also Jones v. Robinson Property Group*, L.P., 427 F.3d 987, 992 (5th Cir. 2005). If the employee merely relies on circumstantial evidence in an effort to establish a permissible inference of discrimination, the Court must employ the burden-shifting framework erected by *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Machinchick*, 398 F.3d at 350 (ADEA); *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001). Where, however, the employee presents direct evidence as to whether his or her protected characteristic was a

motivating factor for the adverse employment decision, then "the *McDonnell Douglas* test is inapplicable." *Thurston*, 469 U.S. at 121 (emphasis added); *see also Jones*, 427 F.3d at 992; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

As Defendant claims that he has shown both direct and circumstantial evidence, the Court will determine whether he has shown both in turn.

## 1. Direct Evidence

The Court will first determine if Allen has shown direct evidence of age and / or race discrimination. In the employment context, direct evidence includes "any statement or document which shows on its face that an improper criterion served as a basis - not necessarily a sole basis, but a basis - for [an] adverse employment action." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). "If an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct." *Wilber v. Tharaldson Employee Management Co.*, 2005 WL 3018262 *6 (N.D. Texas 2005) (citing *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 897-98 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003)). Where an employee is able to point to credible evidence that discriminatory animus was at least a substantial factor in the adverse employment action, the employer has the burden to show by a preponderance of the evidence that the adverse employment action would have occurred regardless of the animus.[6] *See Jones*, 427 F.3d at 992 (citing *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

Parties dispute whether Allen has presented credible evidence of discriminatory animus

---

[6] Although Plaintiff fails to identify the correct standard of analysis in his Response Brief, he does purport to show direct evidence of discrimination and the Court will proceed accordingly. (*See* Pl.'s Resp. at 12-13).

as a substantial motivating factor in his termination.  Allen claims that his affidavit, which

describes remarks that Lawrence made about Allen's age, is sufficient to show that he was

terminated because of his age.[7]  Specifically, Allen claims that "on many occasions" Lawrence

called him "old man," told him he was "too slow" and / or "too slow for the job." (Allen Decl. at

2; Pl. App. A).  In response, Defendant claims that these comments were merely "ambiguous

stray comments" which do not constitute evidence of discrimination.  (Def.'s Mot. at 14).

To qualify as direct evidence of employment discrimination, comments must meet the

four-prong test set forth by the Fifth Circuit in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.

1996).  Specifically, the remark must be (1) related to the protected class at issue, (2) proximate

in time to the employment decision at issue, (3) made by an individual with authority over the

employment decision at issue, and (4) related to the employment decision at issue.  *See Auguster*

*v. Vermillion Parish School Bd.*, 249 F.3d 400, 405-06 (5th Cir. 2001) (citing *CSC Logic*, 82

F.3d at 655).  Allen's declaration fails to specify when the age-related remarks occurred, nor

does it specify how they relate to the employment decision at issue.  Accordingly, the Court

---

[7] Allen also claims that the affidavit of a co-worker, Brenda Fuller ("Fuller") also provides direct evidence
that he was terminated because of his age.  (Pl.'s Resp. at 12).  As he does not point to any particular section of
Fuller's affidavit, any particular comments or conduct she describes, or how any part of her declaration might
qualify as direct evidence, the Court does not include this clam in its analysis.

The Court takes the opportunity at this juncture to express its strong disapproval of the blatant defects in
Plaintiff's Response Brief overall. Firstly, Plaintiff frequently fails to provide specific cites to the Appendix by page
reference, his affidavits are not in numbered paragraphs, and his Appendix falls miserably short of the Court's
pagination filing requirements.  Furthermore, the document is rife with typographical, spelling, citation, and
grammatical errors.  Finally, as the Fifth Circuit has stated, the nonmovant has the burden to "identify specific
evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  *Ragas
v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th 1998).  Rule 56 does not bind the Court to "sift through the
record in search of evidence to support a party's opposition to summary judgment."  *Doddy v. Oxy USA, Inc.*, 101
F.3d 448, 463 (5th Cir. 1996) (citation omitted).  Or put another way, "[j]udges are not like pigs, hunting for truffles
buried in the briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  The quality of Plaintiff's
Response Brief, however, certainly suggests that Plaintiff believes otherwise.  As winning and affable as some pigs
doubtlessly are, *see, e.g.,* E.B. WHITE, CHARLOTTE'S WEB (1952), the Court nonetheless takes offense to this
insinuation.

cannot find that they qualify as direct evidence of discrimination.

Because a jury would have to infer from the remarks alleged in Allen's affidavit that age was a determining factor in Solo Cup's decision to terminate, Allen has failed to provide direct evidence of discrimination.  The Court now turns to whether he has successfully provided circumstantial evidence.

## 2. Circumstantial Evidence

As Plaintiff has failed to provide direct evidence of discriminatory intent, Defendant rightfully contends that Allen's claims should be analyzed using the *McDonnell Douglas* approach.[8]  *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141-42 (2000); *Machinchick*, 398 F.3d at 350 (ADEA); *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001) (Title VII retaliation).  Under the "modified" *McDonnell Douglas* framework adopted by the Fifth Circuit, the employee-plaintiff must first demonstrate a *prima facie* case of discrimination by a preponderance of the evidence.  *See Desert Palace v. Costa,* 539 U.S. 90 (2003); *Rachid*, 376 F.3d at 312.  If the plaintiff meets the initial burden, an inference of intentional discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff.  *Id.*

Once the defendant produces a legitimate, nondiscriminatory reason for the adverse employment action, the inference of discrimination dissipates, and "the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination."  *Machinchick*, 398 F.3d at 350.  Thus, the plaintiff must create "a genuine issue of material fact [by showing] either (1)

---

[8] Claims of discrimination under Title VII and the ADEA are evaluated within the same analytical framework.  *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996) (Title VII); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (ADEA).

that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Id.* at 351-52.[9]

In its motion, Defendant asserts that (1) Plaintiff cannot establish a prima facie case of race and gender discrimination; (2) it has proffered a legitimate, non-discriminatory reason for any alleged adverse employment action; and (3) Plaintiff cannot demonstrate that this legitimate, non-discriminatory reason is pretextual or that race and / or age were otherwise motivating factors in the employment decision.

**a. Prima Facie Case**

To establish a prima facie case of discrimination under the Texas Labor Code, a plaintiff must produce evidence showing (1) that he is a member of a protected class, (2) that he suffered an adverse employment action, (3) that he was qualified for the job, and (4) that he was either (i) replaced by someone not in his protected class or (ii) otherwise discharged for being a member of a protected class. TEX. LAB. CODE ANN. §§ 21.051, 21.125(a); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005); *see also Bowen v. El Paso Electric Company*, 49 S.W.3d 902, 908 (Tex.App.-El Paso 2001, pet'n den'd). The Fifth Circuit "has recognized that a plaintiff

_____

[9] Texas courts have echoed the sentiment regarding the Plaintiff's ultimate burden of persuasion. Regardless of whether the case is one of pretext or mixed motive, as a plaintiff pursuing a chapter 21 claim, Allen must show that discrimination was "a motivating factor" in an adverse employment decision. TEX. LAB. CODE ANN. § 21.125(a) (Vernon Supp.2004-2005) ("[A]n unlawful employment practice is established when the complainant demonstrates that race. . . [or] age. . . was a motivating factor for an employment practice, even if other factors also motivated the practice. . . ."). The Texas Supreme Court has held that the "plain meaning" of section 21.125(a) "establishes 'a motivating factor' as the plaintiff's standard of causation in a [chapter 21] unlawful employment practice claim, regardless of how many factors influenced the employment decision." *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003) (confirming that "motivating factor" is proper standard of causation, even in a "pretext" case); *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex.2001).

may make [the prima facie] showing by demonstrating either that he was replaced by someone outside the protected class or that other similarly situated employees outside the protected class were treated more favorably." *Wheeler v. BL Development Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512- 13 (5th Cir. 2001)).  "To establish a prima facie case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Systems Corp*., 81 F.3d 38, 41 (5th Cir. 1995) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).  The Court will consider each prima facie prong in turn.

**(i) Protected Class and Adverse Employment Action**

First, it is undisputed that Allen, as a fifty-four year old African American, is a member of a protected class.  *See Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir.1986) (noting that the Civil Rights Act was adopted to protect blacks); 29 U.S.C. § 623(a)(1) (prohibiting employment termination on the basis of age); 29 U.S.C. § 631(a) (specifying that individuals over the age of forty are protected by federal statute).

As to the second prong, Allen rightly argues that he faced adverse employment action in the form of his termination on November 2, 2004.  (Pl.'s Resp. at 13).  *See Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995).  Although the Defendant submitted briefing on the issue, it is not clear from the Plaintiff's response brief or reply brief whether he claims he suffered adverse employment action in the form of disciplinary suspensions, denied requests for transfer, or alleged harassment from his supervisor.  In an abundance of caution, however, the Court notes the Fifth Circuit has a "strict interpretation of the adverse employment element" of a prima facie discrimination claim.  *Pegram v. Honeywell, Inc*., 361 F.3d 272, 282 (5th Cir. 2004).  An adverse

employment action must be "an ultimate employment decision" such as hiring, firing, demoting, granting leave, and compensating. *Id.* ("An employment action that does 'not affect job duties, compensation, or benefits' is not an adverse employment action.") (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)). The Fifth Circuit has specifically warned against expanding the definition of "adverse employment action" to include disciplinary filings, supervisor reprimands. . . [any actions] that might jeopardize employment in the future." *See, e.g., Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 407 (5th Cir. 1999). Thus, disciplinary suspensions, denials of transfer requests, and alleged harassment in the workplace do not qualify as adverse employment actions, and Defendant is entitled to summary judgment on those non-discharge claims and any others that do not fall within the purview of "ultimate employment decisions" as narrowly defined by the Fifth Circuit.

**(ii) Qualification for Position**

Parties disagree as to whether Allen met the third prong of his prima facie case. Defendant argues that Plaintiff was not qualified for his position because of his failure to meet performance criteria during the Disciplinary Period. (Def.'s Mot. at 7). Specifically, Defendant points to at least fourteen verbal and written warnings concerning alleged performance issues ranging from straying from his designated work area to his negative attitude. (Def.'s Mot. at 10). Plaintiff rebuts this assertion by pointing to Allen's 20-year work history previous to 2002, which included promotions, raises, and supervisory responsibility. (Pl.'s Resp. at 16). Solo Cup apparently does not contest Allen's unblemished work history previous to Lawrence's hiring. Nor does Solo Cup contest that virtually all of the verbal and written warnings were the result of Lawrence's subjective criticisms of Allen.

A plaintiff challenging his or her termination can generally establish a prima facie case of discrimination by showing that he or she continued to possess the necessary qualifications for the job position at the time of the adverse action. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988). Thus, Plaintiff need only show that he was objectively qualified to hold the position from which he was terminated in order to satisfy this element of his prima facie case. He is not required to negate Defendant's allegations of unsatisfactory performance as part of his prima facie case.[10]

The Fifth Circuit has held that subjective criteria such as that relied on by Defendant "should not be considered part of the prima facie evaluation in a summary judgment proceeding." *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 2000). Plaintiff's rebuttal is sufficient to create a genuine and material fact question on whether Allen was qualified for his position, and distinguishes these facts from those in the cases proffered by Defendant, specifically *Sreeram v. Lousiana State Univ. Med. Ctr.*, 188 F.3d 314, 318-19 (5th Cir. 1999), *Williams v. Simmons Co.*, 185 F.Supp.2d 665, 682 (N.D. Tex. 2001), and the Court's own opinion in *Perez v. MCI World Com Comm.*, 154 F.Supp.2d 932, 939 (N.D. Tex. 2001), in which the Plaintiff did not affirmatively contradict Defendant's assertions of incompetence in the context of a motion for summary judgment. In *Sreeram*, for example, the Court analyzed the plaintiff's poor performance in a medical residency program from which she was terminated at the prima facie stage of her Title VII gender and national origin discrimination case. *Sreeram*, 188 F.3d at 319. After reviewing the record, the Court concluded that plaintiff failed to produce any evidence of her non-objective qualifications to continue in the residency program. There,

---

[10] The Fifth Circuit noted as much in a recent unpublished opinion, *Mayberry v. Tarrant County Cmty. Supervision and Corrections Dep't*, 2002 WL 663713 at *3 n.5 (5th Cir. 2002).

the plaintiff failed to contradict the testimony in the record showing that she lacked the requisite skill to remain in the residency program as a practicing surgeon.  In upholding the district court's determination that the plaintiff was not qualified to continue as a third-year resident in the program, the Court found that her objective qualifications for initial entry into the program had not translated into the actual skills required of a surgeon. The Court, citing *Bienkowski*, held that where the plaintiff has presented no significant evidence of her qualifications, summary judgment may be granted.  *Id*.

By contrast, by directing the Court to his substantial work history with Solo Cup, including promotions, pay raises, and leadership opportunities, and unmarred by any type of discipline prior to the Disciplinary Period, Plaintiff has adduced sufficient evidence to raise a fact question concerning defendant's attack on his subjective qualifications.

**(iii) Disparate Treatment**

Hence, the final issue left for consideration in determining whether Plaintiff has made out a prima facie case of discrimination is whether (1) he was replaced by an individual who was not a member of her protected class, *see Sandstad*, 309 F.3d at 897, or (2) he was otherwise discriminated against, or treated less favorably than a similarly situated individual who was not a member of his protected class, *see Urbano*, 138 F.3d at 206 .

Defendant asserts that Plaintiff does not meet the fourth prong to prove discriminatory termination because he offers no evidence to prove that he was replaced after he was discharged. (*See* Def.'s Mot. at 8).  Allen provides no evidence showing that he was replaced by someone outside the protected class.[11]  Instead, he argues that he was treated less favorably than other

---

[11] Although Allen claims in his Response Brief that he was replaced by a younger white male named Stephen Goad, he concedes in his Affidavit that he actually "[has] no idea if he was replaced."  (Def.'s Decl. at 2; Pl.

similarly situated individuals who were not members of his protected class.  (Pl.'s Resp. at 17).

In employment discrimination cases, evidence of disparate treatment may still suggest a discriminatory motive for the purposes of the fourth prong of the prima facie test.  *Machinchick*, 398 F.3d at 353, n.26.  The Fifth Circuit has merely required evidence that plaintiff was "otherwise discharged because of his protected characteristic."  *Id.*  For example, in *Machinchick v. PB Power, Inc.*, the court accepted evidence of an email sent by a supervisor detailing a strategic plan to phase out older employees in order to promote a "21st Century" mindset within the company.  398 F.3d 345, 352-53 (5th Cir. 2005) (stating that such a statement created an inference that [the plaintiff's] age was a factor in his termination).  Indirect "stereotyping remarks" are also sufficient to support the inference of discrimination.  *Id.* at 353.

Allen purports to identify four factors that show disparate treatment, some of which apply to his race-related claims, some of which apply to his age-related claims, and some of which apply to both.  They are: (1) Lawrence's failure to hold employees outside of Allen's protected class to the same work standards as he held Allen (Pl.'s Resp. at 17; Allen Depo. 29:23-29:35); (2) Defendant's failure to provide evidence of adverse employment action prior to 2000, the year Lawrence was hired, and Plaintiff's affidavit showing promotions and raises during that time (Allen Decl. at 1; Pl. App. A); (3) the temporal proximity between Plaintiff's EEOC complaints and his termination (Pl.'s Resp. at 17 ¶ 16)[12]; and (4) Lawrence's comments about Allen's age

---

Apps. 27).  " '[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.' " *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991).

[12] While the Plaintiff claims that the "temperel [sic] proximity between Plaintiff's *sexual* discrimination complaint and his termination is sufficient" to satisfy the fourth prong of the prima facie determination, the Court assumes that he refers to his age and racial discrimination complaints. (Pl.'s Resp. ¶ 16) (emphasis added).

and work pace.  (Allen Depo. 37, 38:23-25, 39:1-23).[13]

The Court first turns to those factors that relate to Allen's race-related claims.  Allen states that Lawrence would "nitpick" at him and other black employees about "little" things, but would not do the same to white employees.  (Allen Decl. at 2; Pl. App. A; Allen Dep. 29, 127).  Similarly, he claims that Lawrence wrote him up when he was late to work and when he left the floor to get parts, but did not do the same for white employees.  (Allen Decl. at 2; Pl. App. A; Allen Depo. 32, 118).  He further claims that Lawrence helped white employees with machines, but did not help Allen.  (Allen Decl. at 2; Pl. App. A).

In each of these instances, Allen either (1) fails to offer specific examples of the discrimination he asserts, (2) fails to show how he was similarly situated with the non-protected employees he alleges received more favorable treatment, or (3) fails to show that the employees who received more favorable treatment were white, or from a nonprotected class.  For example, in his affidavit, Allen claims that a white employee name Frankie Crow ("Crow") received assistance from Lawrence on a down machine.  (Allen Decl. at 2; Pl. App. A).  In the same sentence, however, he states that Crow is a Level 6 mechanic, not a Level 8 mechanic like Allen, and fails to show how he and Crow were similarly situated.  The Court may not assume that these two individuals are similarly situated merely because they work at the same company.  There is no evidence showing that these two employees- with different work titles - share similar duties and responsibilities, have comparable levels of work experience, require similar levels of supervision, or anything else to that effect.

Furthermore, Allen acknowledges that in his deposition, he claimed that no white

---

[13] Allen suggests that he was the only African-American remaining in his department after he was discharged (Pl.'s Resp. at 17 ¶ 15), but adduces no evidence to this effect.

department employees were required to obtain permission to leave the floor to retrieve parts, yet he cites no specific examples as to which employees he refers to or on what occasions he observed this behavior. (Allen Depo. 32). Similarly, in the same deposition, Allen claims that a department employee by the name of "Wayne" was not reprimanded for coming in late, but later in the same deposition he admits that Wayne was also black. (Allen Depo. 118, 120).[14] This statement is even further perplexing, because at one point Allen claims that there were no other black employees in his department while he was employed at Solo Cup. Consequently, it is not even clear whether Wayne was similarly situated with Allen.

Allen also claims that the absence of any disciplinary action against him before Lawrence became his supervisor is somehow indicative of discriminatory intent. This claim may be sufficient to show that he was singled out unfairly by Lawrence, or perhaps poorly managed by Lawrence, but it is not to sufficient to show that he was singled out due to his race. *See Steele*, 962 F.Supp. at 978 ("An employer may make an erroneous employment decision, so long as that decision is not made with a discriminatory motive.") (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir.1995)).

Finally, Allen claims that the temporal proximity between the filing of his EEOC complaints and his termination show that the discharge occurred under circumstances suggesting a discriminatory motive. (Pl.'s Resp. at 17 ¶ 16). The Court finds this argument, which is more

---

[14] Allen also mentions employees named "Glen Crowe" and "Frankie" coming in late without consequences, but provides no evidence showing that these individuals were similarly situated or members of the nonprotected class. (Allen Depo. 118). Furthermore, the Court's copy of the deposition in Plaintiff's Appendix is blacked out over Allen's discussion of these individuals, to the point where the Court is unable to discern exactly what Allen stated about them in the first place.

often utilized in the context of a retaliation claim (which Defendant does not make here), without

meritless, as Allen's discharge occurred approximately six months after his Third Charge. *See*

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere

temporal proximity between an employer's knowledge of protected activity and an adverse

employment action as sufficient evidence of causality to establish a prima facie case uniformly

hold that the temporal proximity must be 'very close.' ").

       As Allen offers no more than conclusory assertions of less favorable treatment than

whites, as opposed to specific examples of disparate treatment between himself and other

nonprotected similarly situated individuals, he has failed to raise a reasonable issue of fact as to

race discrimination. *See, e.g., Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir.1995)

("[B]ald assertions of age discrimination are inadequate to permit a finding that proscribed

discrimination motivated [defendant's] actions against [plaintiff]."); *Grizzle v. Travelers Health

Network, Inc.*, 14 F.3d 261, 268 (5th Cir.1994) (stating that employee's "self-serving generalized

testimony stating her subjective belief that discrimination occurred. . . is simply insufficient to

support a jury verdict in plaintiff's favor").  For this reason, the Court grants Defendant's Motion

for Summary Judgment as to Allen's racial discrimination claims.

       Turning to Allen's age-related claims, Allen asserts in his affidavit, and is not

contradicted, that the only negative evaluations and disciplinary actions he received in his two

decades of employment at Solo Cup were those written by Lawrence during the final two years

of his employment.  (Allen Decl. at 1; Pl. App. A).  This coupled with Lawrence's comments

about Allen being an "old man," and subsequently, "too slow," might enable a fact finder to infer

that Allen was discriminated against on the basis of his age. *See Acker v. DeBoer*, 429

F.Supp.2d 828, 841 (N.D. Tex. 2006).

Viewing the evidence in the light most favorable to Allen, the Court finds that he has shown a prima facie case of age discrimination.  He can show that he was over 40-years old when he was terminated; that he was qualified for his position prior to his termination; and that he has produced some circumstantial evidence of discriminatory intent-i.e. his testimony that his supervisor made negative comments about his age and the effect of his age on his work ability. The burden now shifts to Solo Cup to produce a legitimate nondiscriminatory reason for termination.

**b. Legitimate Nondiscriminatory Reason for Terminating Allen**

Because Allen has made a prima facie showing, the burden now shifts to Solo Cup to produce evidence that it had a legitimate nondiscriminatory reason for terminating Allen.  In its briefing, Solo Cup claims that Allen's age and / or race did not play any role in its decision to fire him.  Instead, Solo Cup contends that Allen's deficient work performance was the reason for his discharge.  (Pl.'s Mot. at 10).

To support its claims, Solo Cup points to at least fourteen verbal and written warnings during the course of the Disciplinary Period concerning alleged performance deficiencies consisting of such issues as getting down machines up working more quickly, staying in designated work areas, working efficiently, being a team player, conducting a more accurate analysis of machine problems, and improving overall attitude towards his supervisor and co-workers. (Def.'s Mot. at 10).

At this stage, the employer's burden "is one of production, not persuasion: it 'can involve no credibility assessment.' " *See Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Center v.*

*Hicks*, 509 U.S. 502, 509 (1993)).  It is well-established that an employee's deficient work performance is a legitimate nondiscriminatory reason for termination.  *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  Thus, the Court finds that Solo Cup has met its burden of production.  Plaintiff must now offer sufficient evidence creating a genuine issue of material fact that Solo Cup's nondiscriminatory reason for terminating him was merely a pretext for discrimination, or that discrimination was a motivating factor in Solo Cup's decision to terminate him.  *See Rachid*, 376 F.3d at 312.

**c. Evidence of Discriminatory Intent**

Since defendants have met their burden of producing legitimate, nondiscriminatory reasons for discharging plaintiff, the burden shifts to plaintiff to produce evidence of discriminatory intent.  *See Machinchick*, 398 F.3d at 350 (citing *Reeves*, 120 S.Ct. at 2109). Plaintiff may establish discriminatory intent by showing (1) that the defendants' stated reasons for his discharge are false or unworthy of credence (pretext), or (2) that if the reasons are true, his age and / or race were motivating factors in the defendants' decision to discharge him (mixed motive).  *See Tex. Dept. Community Affaris v. Burdine*, 450 U.S. 248, 255 (1981); *see also Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir.2001) (citation omitted).[15]  "The

---

[15] At the third stage, as modified by *Rachid* in light of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90 (2003), a plaintiff may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative.  *In Desert Palace*, the Supreme Court held that a Title VII plaintiff did not need to present direct evidence of discrimination in order to receive a mixed-motive jury instruction under 42 U.S.C. § 2000e-2(m).   539 U.S. at 101-02. In *Rachid*, the Fifth Circuit applied that analysis to an ADEA claim in the context of a summary judgment motion. 376 F.3d 305.  *Id.* (citations omitted).

Under the pretext alternative, the plaintiff must "offer sufficient evidence to create a material issue of fact. . . that the defendant's reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312.  Under the mixed-motives alternative, plaintiff must "offer sufficient evidence to create a material issue of fact. . . that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic[.]" *Id*.  "If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove it would have taken the same action despite the discriminatory animus." *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir.2005) (citing *Rachid*, 376 F.3d at 312.)

evidence offered to counter the employer's proffered reasons must be substantial." *Wallace*, 271

F.3d at 220 (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001)). In

addition, "[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory

reasons the employer articulates." *Wallace*, 271 F.3d at 220 (citation omitted); *Rutherford v.

Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir.1999); *Clay v. Holy Cross Hosp.*, 253 F.3d

1000, 1007 (7th Cir.2001).

 Plaintiff has offered no evidence to rebut Defendant's stated reasons for terminating him,

specifically, his negative work attitude, his failure to follow work protocol, and his straying from

the assigned work areas.  Thus, he has failed to meet his burden to show pretext. *See Wallace*,

271 F.3d at 220. Where the plaintiff has offered no evidence to rebut the employer's facially

benign explanations, no inference of discrimination can be drawn.  *See EEOC v. La. Office of

Cmty. Servs.*, 47 F.3d 1438, 1447-48 (5th Cir.1995).  Consequently, Plaintiff has failed to show a

genuine issue of material fact regarding pretext.

 Plaintiff can still survive summary judgment, however, by offering sufficient evidence to

create a material issue of fact that Defendant's stated reasons for discharge, while true, are only

some of the reasons for its conduct, and that another "motivating factor" is Plaintiff's age.  *See

Rachid*, 376 F.3d at 312.[16]   At the very least, a plaintiff seeking to present a mixed-motives

---

[16] A number of other federal courts apply the modified *McDonnell Douglas* framework only where the
plaintiff concedes that discrimination was not the sole reason for his discharge, and instead argues that
discrimination was only a motivating factor, or where the plaintiff does not rely on the mixed-motive analysis. *See,
e.g., Hughes v. Texas Keg Steakhouse & Bar, Inc.*, 2006 WL 708158 (N.D.Tex. Mar. 21, 2006) (citation omitted);
*Pool v. U.S. Investigation Servs.*, 2005 U.S. Dist. LEXIS 31928, at *5 n.1 (N.D.Tex. Dec. 6, 2005) (declining to
engage in mixed-motive analysis because the plaintiff did not rely on that theory); *Walker v. Norris Cylinder Co.*,
2005 U.S. Dist. LEXIS 20465, at *11 n. 5 (N.D.Tex. Sept. 9, 2005) (same); *Bywaters v. S. Methodist Univ.*,2006
U.S. Dist. LEXIS 4314, at *6-7 (N.D.Tex. Feb. 3, 2006) (same)).  *See also Wynn v. J.C. Penney Co., Inc.*, 2006 WL
722125, at *3 (E.D.Tex. Mar.14, 2006) (stating that the mixed-motive analysis adopted by the Fifth Circuit in

claim must show that an improper motive was one of several motives for an adverse employment action. *See Desert Palace*, 539 U.S. at 98. "The plaintiff must prove that age actually played a role in and had a determinative influence on the employer's decision-making process." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) (quotations and citations omitted). If a plaintiff is able to show that age was a motivating factor in the employment decision, "it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus." *Rachid*, 376 F.3d at 312 (quoting *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1217 (5th Cir.1995)). If the employer fails to carry this burden, then the motion for summary judgment must be denied. *Rachid*, 376 F.3d at 312.

Plaintiff contends that the various comments about his age made by Lawrence are sufficient circumstantial evidence to create a genuine issue of material fact on whether his age was a "motivating factor" in his termination. In response, Solo Cup contends that the Court should disregard these statements as mere "stray remarks" since they were not proximate in time to Allen's termination. (Def.'s Mot. at 12).

In section II.B.1, *supra*, the Court found that Lawrence's comments, on their face, were not sufficient direct evidence that Allen's age was a motivating factor for his termination. Under that analysis, the Court found that each of the comments that Allen mentions in his declaration did not meet the strict four-part test in *CSC Logic* since they were not proximate in time to the

---

*Rachid* applies where the plaintiff concedes that discrimination was not the sole reason for the discharge, but that discrimination was a motivating factor).

In this action, Plaintiff claims to rely on a mixed-motive theory, but it's not clear whether he has conceded that Solo Cup had any reason for discharging him other than alleged discrimination. Thus, it is not clear whether the Court must apply the mixed-motive analysis to Plaintiff's termination claim, but it does so in an abundance of caution.

termination, nor did they directly refer to the actual decision to terminate Allen.

At this stage, however, a plaintiff does not have to meet the strict *CSC Logic* test in order to use discriminatory remarks as circumstantial evidence that his or her protected characteristic was a motivating factor for an adverse employment action.  The Fifth Circuit has recognized the inherent value of workplace remarks as circumstantial evidence of discriminatory intent, even though such remarks may be "stray remarks" that would not ordinarily suffice as direct evidence of employment discrimination.  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (holding that workplace remarks sufficed as circumstantial evidence from which an inference of discriminatory intent could be drawn even though comments were found to be "stray remarks" under the *CSC Logic* test); *see also, Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1251 (10th Cir.2002) (holding same).[17]

Accordingly, a plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination need only prove that the remarks demonstrate (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker. *Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 225.[18]

---

[17] In *Laxton v. Gap, Inc.*, the Fifth Circuit stated that even despite the *Reeves* decision, it would "continue to apply the *CSC Logic* test when a workplace remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework."  *Laxton*, 333 F.3d at 583 n.4 (emphasis added). Yet, the court in *Laxton* refused to apply the *CSC Logic* test when determining whether workplace remarks should be considered as additional circumstantial evidence of discrimination under the *McDonnell Douglas* framework.  *Id.* at 583 & n.4. Noting that it had opted for a more flexible test in its decision in *Russell*, the Fifth Circuit in *Laxton* chose to apply a different standard to cases where discriminatory remarks are offered as circumstantial evidence of employment discrimination.  *See id.* (citing *Russell*, 235 F.3d at 226).

[18] Even if Lawrence does not have substantial influence or leverage over the relevant decisionmakers at Solo Cup, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice." *Laxton*, 333

Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case' " that properly may be considered by the court when ruling on a motion for summary judgment.  *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49).  The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id.* at 903.

Viewing the evidence in the light most favorable to Allen, the ageist remarks made by Lawrence mentioned in Allen's declaration are appropriate circumstantial evidence of age discrimination.  Plaintiff claims that Lawrence made comments about his age, stating that he was "too slow" and "an old man," and stating that he needed to "speed up his work."  These comments were made during the last two and a half years of Allen's employment, after a multi-decade career with Solo Cup previously free of negative work reviews or discipline.  These comments also occurred in the context of alleged constant "nitpicking" and "harassment" concerning Allen's speed, efficiency, and work ability.  Whether these comments were actually made as alleged depends on a credibility determination, which the Court absolutely cannot resolve at the summary judgment stage.

For these reasons, the Court finds that Allen has met his burden of raising a genuine issue of material fact on whether his age was a motivating factor for his termination. Additionally, because Solo Cup did not present any evidence that it would have made the same decision to

---

F.3d at 584 (citing *Russell*, 235 F.3d at 227).

terminate Allen, even if his age had been a motivating factor for his termination, Defendant's motion for summary judgment must be denied on Allen's age-related discrimination claim.

## C. General Discrimination

In addition to Claims I and II in Plaintiff's Complaint, both of which are premised on age- and race-based theories, Defendant pleads a "discrimination" claim in Count III, claiming that Defendant intentionally discriminated against Plaintiff "in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's age and race. . . ." (Compl. ¶¶ 14-15).  The only discernible difference between Counts I and II and Count III is Plaintiff's reference to his demotion from work leader back to Level 8 Mechanic after Lawrence became his supervisor.

The non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *Celotex*, 477 U.S. at 322-23.  Here, Plaintiff fails to present affirmative evidence showing the existence of this issue for trial.  In fact, although he points to his declaration showing that he was demoted, (1) he states that the demotion was due to his lack of a college degree, not his age or race (Pl.'s Resp. at 4) and (2) he does not provide the Court with the portion of his declaration referring to the reason for his demotion.  The summary judgment evidence simply does not reflect a genuine issue of material fact as to the reason, or even the facts, behind Plaintiff's alleged demotion.

For this reason, even viewing the pleadings in a light most favorable to the Plaintiff, the Court has no choice but to reason that Defendant's Motion for Summary Judgment is warranted

on this claim.

## D. Negligent Supervision

Allen alleges that Solo Cup's senior management failed to exercise reasonable care to prevent Lawrence from engaging in discriminatory practices. Allen seeks recovery of his pecuniary damages resulting from the negligent supervision of Solo Cup.

An employer has a legal duty to use ordinary care in adequately supervising its employees, *see Mackey v. U.P. Enters.*, 935 S.W.2d 446, 459 (Tex.App.–Tyler 1996, no writ), and this duty has been applied to employees themselves.  *See Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97-98 (Tex.App.–Houston [14th Dist.] 1998, pet. denied).[19]  Even assuming that Allen could even show evidentiary support on the elements of negligent supervision such that a reasonable trier of fact could find in his favor, however, his allegations supporting this claim are redundant of his claims under the Texas Labor Code.  The Texas Labor Code "provides the exclusive state-law means for redress of employment discrimination and preempts claims for discrimination brought under other state-law theories."  *Cook v. Fidelity Invs.*, 908 F. Supp. 438, 442 (N.D. Tex. 1995); *see also Vincent v. West Texas State Univ.*, 895 S.W.2d 469, 473-74 (Tex.App.-Amarillo 1995, no writ); *Stinnett v. Williamson County Sheriff's Dept.*, 858 S.W.2d 573, 576-77 (Tex.App.-Austin 1993, writ denied); *Bates v. Humana, Inc.*, 63 Fair Empl.Prac.Cas. (BNA) 327, 336 (W.D.Tex.1993).

Thus, Allen's claim for negligent supervision is preempted by the Texas Labor Code, and

---

[19] It is not clear whether a separate Texas cause of action exists against an employer for negligent supervision apart from negligent hiring, as at least one Texas court of appeals has questioned the existence of a separate cause of action for negligent supervision.  *See Castillo v. Gared, Inc.*, 1 S.W.3d 781, 785-86 (Tex. App.–Houston [1st Dist] 1999, pet. denied).

the Court grants Defendant's motion on this claim.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Solo Cup's Motion for Summary Judgment on Plaintiff's age-related discrimination claim, his general discrimination claim, and his negligent supervision claim.  The Court **DENIES** Solo Cup's Motion for Summary Judgment on Plaintiff's race-related discrimination claim.


**IT IS SO ORDERED.**

**ENTERED: July 13, 2006**

_____
**JUDGE JERRY BUCHMEYER**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**